IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN SHULMAN, et al., | : | Case No. 3:08-CV-0229 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| CHROMATEX, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

December 16, 2009

## BACKGROUND:

On February 5, 2009, plaintiffs Alan Shulman; Stanley Siegel; Ruth

Cherenson, as personal representative of the estate of Alan Cherenson; and

Adrienne Rolla and M.F. Rolla, as executors of the estate of Joseph Byrnes

("Plaintiffs"), instituted this civil action. (Rec. Doc. No. 1). Plaintiffs named as

defendants in their original complaint Chromatex, Inc. ("Chromatex"); Rossville

Industries, Inc. ("Rossville Industries"); Rossville Companies, Inc. ("Rossville

Companies"); Rossville Investments, Inc. F/k/a A&E Leasing Company

("Rossville Investments"); and Culp, Inc. ("Culp").

At issue in the case is what party or parties should be deemed liable for

additional and future response costs incurred by the United States Environmental

Protection Agency ("EPA") in respect to a property located in the Valmont Industrial Park in Luzerne County, Pennsylvania ("Property"). The Property was purchased in July of 1978 by The Valmont Group, a New Jersey general partnership comprised of partners Alan Shulman, Stanley Siegel, Alan Cherenson, James Cochran, and Joseph Byrnes.

In their original complaint, the plaintiffs seek relief based on a number of counts. First, the plaintiffs contend that they are entitled to contribution from Chromatex, Rossville Industries, and Culp pursuant to section 113(f) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9613(f) ("CERCLA") (Count I). Second, the plaintiffs seek declaratory judgment against Chromatex, Rossville Industries, and Culp regarding the apportionment of liability as to additional and future response costs (Count II). Third, plaintiffs claim that defendants Chromatex, Rossville Industries, Rossville Companies, Rossville Investments, and Culp are required to indemnify the plaintiffs as to the response costs at issue based on an indemnification contract entered into between the defendants and the Valmont Group partners (Count III). Fourth, the plaintiffs allege that defendants Chromatex, Rossville Industries, Rossville Companies, Rossville Investments, and Culp breached the indemnification contract entered into with the Valmont Group partners (Count IV).

On March 24, 2008, defendant Culp filed an answer to the original complaint, as well as a crossclaim against Chromatex, Rossville Industries, Rossville Companies, and Rossville Investments. (Rec. Doc. No. 13). On April 9, 2008, defendants Chromatex, Rossville Industries, Rossville Companies, and Rossville Investments filed an answer to the complaint. (Rec. Doc. No. 16). Defendants Chromatex, Rossville Industries, Rossville Companies, and Rossville Investments filed an answer to defendant Culp's crossclaim on April 14, 2008. (Rec. Doc. No. 17).

On December 23, 2008, the Honorable A. Richard Caputo granted the motion by counsel for Chromatex, Rossville Industries, Rossville Companies, and Rossville Investments to withdraw as counsel. (Rec. Doc. Nos. 23 and 22). The instant case was reassigned to this Court on January 9, 2009. (Rec. Doc. No. 26). On January 22, 2009, this Court denied the plaintiffs' motion seeking to direct the defendants to secure replacement counsel. (Rec. Doc. No. 27 and 26).

Plaintiffs filed a motion to compel discovery on February 26, 2009, as well as a brief in support. (Rec. Doc. Nos. 32 and 33). On March 25, 2009, this Court granted the plaintiffs' motion to compel discovery. (Rec. Doc. No. 34). The plaintiffs filed a renewed motion to compel responses to discovery requests that were served on Rossville Industries and a brief in support thereof. (Rec. Doc. Nos.

37 and 38).  This Court granted the plaintiffs' renewed motion to compel discovery on June 2, 2009.  (Rec. Doc. No. 42).

On June 1, 2009, plaintiffs filed a motion seeking to extend the time in which to complete discovery.  (Rec. Doc. No. 39).  Although defendant Culp did not oppose the motion, Culp did file a response in which it clarified several statements made by plaintiffs in their motion seeking to extend time in which to complete discovery.  (Rec. Doc. No. 40).  On June 2, 2009, this Court granted the plaintiffs' motion.  (Rec. Doc. No. 41).  This Court granted an additional motion for an extension of the discovery period on October 16, 2009.  (Rec. Doc. Nos. 53 and 49).

On September 18, 2009, the plaintiffs filed the motion currently at issue, in which the plaintiffs seek leave to file an amended complaint.  (Rec. Doc. No. 43).  Plaintiffs filed with their motion a brief in support.  (Rec. Doc. No. 44).  On October 5, 2009, defendant Culp filed a brief in partial opposition to plaintiffs' motion for leave to file an amended complaint.  (Rec. Doc. No. 47).  On October 19, 2009, the plaintiffs filed a reply brief.  (Rec. Doc. No. 54).  The matter, then, is ripe for disposition.  For the following reasons, we will grant the plaintiffs' motion seeking leave to file an amended complaint.

**STATEMENT OF FACTS:**

As noted above, the Valmont Group, a New Jersey general partnership comprised of partners Alan Shulman, Stanley Siegel, Alan Cherenson, James Cochran, and Joseph Byrnes, purchased the Property in July of 1978. After purchasing the Property, which included an industrial plant and a parking area, the Valmont Group leased the Property to Chromatex, which operated a fabric manufacturing plant from July 1978 until April 2001. As part of its fabric manufacturing operations, Chromatex used trichloroethylene ("TCE"), which allegedly was released into the surrounding environment and groundwater. In December of 1986, Rossville Industries acquired Chromatex and continued to operate that company as its wholly-owned subsidiary.

In October of 1991, Chromatex and Rossville Industries purchased the Property from the plaintiffs. Chromatex and Rossville, in purchasing the Property, agreed to indemnify and defend the plaintiffs from liability "arising out of any event, activity or condition associated with the environmental laws and/or the release of hazardous materials regardless of when such liability arose or may arise" ("Indemnification Contract"). (Rec. Doc. No. 44 at 3). It appears as though Chromatex and Rossville Industries paid a lower price for the Property, as those entities understood the attendant environmental issues concerning the Property.

The EPA eventually filed suit against both Chromatex and the plaintiffs in

the United States District Court for the Middle District of Pennsylvania pursuant to section 107 of the CERCLA, 42 U.S.C. § 9607. Chromatex appears to have met its obligations under the Indemnification Contract between itself and the plaintiffs. As a result, Rossville Investments[1] paid the resulting monetary judgment of $682,002.16, issued by this Court on February 9, 1994, that EPA had obtained based on its lawsuit against the plaintiffs and Chromatex ("1994 Judgment"). Plaintiffs also claim that the EPA obtained a declaratory judgment entitling it to future response costs related to the Property.

In 1993, Culp purchased Chromatex and a number of Rossville entities.[2] Plaintiffs claim that the Chromatex facility was operated in a manner that was substantially similar to that of the facility's prior owners.

According to plaintiffs, they were unaware that the EPA pursued continued actions and incurred continued costs relating to the contamination of the Property. Plaintiffs claim that they did not learn of these activities until 2005, at which time the EPA sent the plaintiffs an invoice amounting to more than $3 million regarding response actions undertaken by the EPA, actions which presumably have been

[1] The Court is not aware of any explanation as to why Rossville Investments, and not Chromatex, paid the resulting judgment.

[2] Defendant Culp claims that it paid the funds related to the 1993 purchase of the Property to Rossville Investments, the parent/holding company that paid the $682,002.16 judgment issued by this Court on February 9, 1994.

taken since the 1994 Judgment. In addition, plaintiffs allege that they have received more than $8.6 million worth of invoices regarding EPA response activities on the Property. Plaintiffs also claim that Chromatex and Rossville Industries, as well as Culp as a subsequent owner of Chromatex and other Rossville entities, have refused to indemnify and defend against these additional EPA requests. Plaintiffs allege that these entities are required to indemnify and defend the plaintiffs pursuant to the Indemnification Contract.

Culp claims that the plaintiffs, in writing on February 6, 2004 and March 24, 2004, demanded that Chromatex and Rossville Industries were required to "honor their [indemnity] obligations." (Rec. Doc. No. 47 at 5). Culp contends that, apparently, Chromatex and Rossville Industries did not respond to the demand. Culp also claims that the plaintiffs, on September 28, 2005, sent a demand to Culp alleging that Culp was required to indemnify and defend the plaintiffs because Culp was a corporate successor to the 1991 Indemnification Contract. Culp claims to have rejected the plaintiffs' request in a timely fashion.

**STANDARD OF REVIEW:**

According to Fed. R. Civ. P. 15(a)(2), under the circumstances, "a party may amend its pleading only with the opposing party's written consent or the court's leave." In addition, leave should be freely granted "when justice so requires." Id.

A district court may "deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  Amendment will be considered futile when an element essential to the claim fails to meet the legal sufficiency standard under Fed. R. Civ. P. 12(b)(6).  See, e.g., Sprinturf v. Southwest Recreational Industries, Inc., 281 F.Supp 2d 784, 785-86 (E.D. Pa. 2003).

**DISCUSSION**:

Plaintiffs claim to have filed the instant motion to amend their complaint so as to add additional defendants and claims based on evidence obtained through the discovery process.  This new evidence surrounds defendant Culp's 1993 purchase of Chromatex.  Plaintiffs contend that, based on negotiations with Rossville Companies, Rossville Investments, and their controlling officers Ronald W. Satterfield and W. Frank Hutcheson[3], Culp agreed to make its payments for Chromatex to Rossville Companies, Rossville Investments, or other Satterfield- or

_____

[3] Plaintiffs claim that Mr. Satterfield and Mr. Hutcheson are "controlling officers, directors and majority shareholders of each of" Chromatex, Rossville Industries, Rossville Companies, and Rossville Investments  (Rec. Doc. No. 43 at 2).

Hutcheson-controlled entities instead of to Chromatex. Pursuant to this agreement, plaintiffs allege that Culp paid $500,000 to both Satterfield and Hutcheson for non-compete and consulting agreements, paid $600,000 to Rossville Companies, paid $6.4 million in cash to Rossville Investments, and issued a promissory note worth $9.6 million to Rossville Investments. Plaintiffs claim that Satterfield and Hutcheson, as well as Chromatex, Rossville Industries, Rossville Companies, and Rossville Investments, conveyed and concealed Chromatex and Rossville Industries assets. Plaintiffs allege that these assets were hidden within other Satterfield- and Hutcheson-controlled entities, which include Feldspar Investments, LLC ("Feldspar Investments"), and Feldspar Properties, LLC ("Feldspar Properties"). Because of these alleged actions by defendants, plaintiffs claim that Chromatex and Rossville Industries are incapable of defending and indemnifying plaintiffs from current EPA claims.

Plaintiffs argue that Culp participated with the other defendant corporations and Satterfield and Hutcheson in reducing the assets of Chromatex and Rossville Industries to such an extent so as to leave those two entities as mere corporate shells, unable to meet their alleged obligations under the Indemnification Contract.

Defendant Culp does not oppose that portion of plaintiffs' motion by which plaintiffs seek leave to add as additional defendants Satterfield, Hutcheson,

Feldspar Investments, and Feldspar Properties. However, Culp does object to the plaintiffs' contention that Culp was also engaged in a scheme to fraudulently divert assets from Chromatex and Rossville Industries so as to prevent the plaintiffs from protection under the Indemnification Contract.

In light of the above, plaintiffs seek to add a number of counts and defendants to the instant action. First, Plaintiffs seek to add a tortious interference with contract claim against Rossville Companies, Rossville Investments, Ronald W. Satterfield ("Satterfield") and the executors of the estate of W. Frank Hutcheson ("Hutcheson"), and Culp (Count V). Second, plaintiffs wish to add a claim for fraudulent conveyance in violation of the Pennsylvania Uniform Fraudulent Conveyance Act, 39 P.S. § 351 et seq., against Chromatex, Rossville Industries, Rossville Companies, Rossville Investments, and Satterfield and Hutcheson (Count VI). Third, pursuant to the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa.C.S. § 5101 et seq., plaintiffs seek to add a claim for fraudulent transfer against Chromatex, Rossville Industries, Rossville Companies, Rossville Investments, Satterfield and Hutcheson, and Feldspar Investments and Feldspar Properties (Count VII). Fourth, plaintiffs wish to add a conspiracy to defraud creditors claim against Chromatex, Rossville Industries, Rossville Companies, Rossville Investments, Satterfield and Hutcheson, and Culp (Count VIII). Fifth,

plaintiffs claim that Rossville Companies, Rossville Investments, and Satterfield and Hutcheson breached their fiduciary duty owed to the plaintiffs as creditors (Count IX). Sixth, plaintiffs seek to add an equitable accounting claim against Chromatex, Rossville Industries, Rossville Companies, Rossville Investments, Satterfield and Hutcheson, Feldspar Investments and Feldspar Properties, and Culp (Count X). Finally, plaintiffs claim that, as it would be unjust and inequitable for Rossville Companies, Rossville Investments, Satterfield and Hutcheson, and Feldspar Investments and Feldspar Properties to retain Chromatex's assets, these individuals and entities should be required to hold such assets in trust for the plaintiffs (Count XI).

### I. Whether Plaintiffs' Claims of Tortious Conduct are Futile

Defendant Culp first argues that the plaintiffs' claims of tortious conduct against Culp are conclusory and speculative and, as such, should be considered futile under Fed. R. Civ. P. 12(b)(6). Plaintiffs, on the other hand, contend that they have pled facts sufficient to allege plausible claims that Culp acted tortiously in its acquisition of Chromatex.

We agree with the plaintiffs that they have pled enough facts to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) (stating that "[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); see also Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007).  In their amended complaint, the plaintiffs set forth sufficient facts to support a plausible claim that Culp tortiously interfered with the contract at issue and did in fact conspire to defraud creditors, namely the plaintiffs, in this case.  The plaintiffs allege in their amended complaint that (1) Culp knew at the time that it purchased Chromatex and the related Rossville entities that Chromatex was burdened by an indemnification obligation; (2) Culp knew that, after it completed the purchase, Chromatex would no longer have any assets; (3) Culp in fact paid other entities, and not Chromatex, for the purchase of Chromatex's assets; (4) Culp did so in order to prevent plaintiffs from being paid pursuant to the Indemnification Contract; and (5) while Culp leased the real property then owned by Chromatex, Culp continued to make payments not to Chromatex, but instead to other entities.

In light of the above, we conclude that the facts alleged by plaintiffs are more than sufficient to make out a plausible claim against Culp.


## II.  Whether Proximate Cause is Lacking in Plaintiffs' Tort Claims

Second, defendant Culp argues plaintiffs' claims against it that are based in

tort fail to allege that Culp's conduct was the proximate cause of the harm incurred by plaintiffs. Therefore, Culp purports that plaintiffs' tort claims are futile. On the other hand, plaintiffs contend that they have adequately alleged that Culp was in fact a proximate cause of the injury concerning both the tort- and conspiracy-based claims against Culp.

We again must agree with the plaintiffs in concluding that proximate cause has been properly alleged here as to the tort-based claims against defendant Culp. The link between the conduct that the plaintiffs allege Culp engaged in and the harm to the plaintiffs is neither attenuated nor remote; in fact, the plaintiffs allege that Culp was an integral component in a scheme designed to leave Chromatex and Rossville Industries, those entities subject to the Indemnification Contract, as mere corporate shells. The Pennsylvania Superior Court has noted that it is incumbent upon a court, in the context of discerning liability, to "determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of." Reilly v. Tiergarten, Inc., 633 A.2d 208, 210 (Pa. Super. 1993). Plaintiffs' claims as to Culp's awareness of the Indemnification Contract and that, in light of the agreed-upon payment scheme, Chromatex would be unable to meet its obligations under the Indemnification Contract, are important in this regard.

In light of these claims, it appears that the injuries allegedly sustained by plaintiffs would have been foreseeable to a reasonable person in the position of Culp.  Therefore, we must conclude that the plaintiffs have properly alleged proximate cause as to their tort claims against Culp.

## III.  Whether Plaintiffs Raise an Actionable Conspiracy to Defraud Claim as to Culp

Third, defendant Culp claims that no conspiracy to defraud claim exists as there is no underlying fraud claim that is actionable against Culp.  Plaintiffs contend that they need not allege that Culp itself violated the PUFCA or the PUFTA or committed common law fraud in order to make out a claim for conspiracy to commit fraud; instead, plaintiffs claim that they need only allege an underlying tort.

In Pennsylvania, to make out a conspiracy claim, a plaintiff must "demonstrate that (1) two or more individuals agreed either to perform an unlawful act or to perform a lawful act through unlawful means or for an unlawful purpose, (2) at least one co-conspirator performed an overt act in furtherance of the conspiracy, and (3) the plaintiff suffered actual legal damages as a result of the conspiracy."  See v. Fink, 2009 U.S. Dist. LEXIS 19328, *19 (M.D. Pa. Mar. 10, 2009) (citing McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005)).  In addition, "[a] claim for civil conspiracy 'cannot be pled without also alleging an underlying

14

tort.'" McGreevy, 413 F.3d at 371 (quoting Boyanowski v. Capital Area

Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000).  Also necessary for a proper

conspiracy claim is proof of malicious intent.  See Fink, 2009 U.S. Dist. LEXIS

19328 at *19 (citing Reading Radio, Inc. v. Fink, 833 A.2d 199, 212 (Pa. Super.

Ct. 2003)).

In this case, plaintiffs actually have alleged two underlying torts: Count VI,

alleging fraudulent conveyance in violation of the PUFCA, and Count VII, alleging

fraudulent transfer in violation of the PUFTA.  That the plaintiffs have chosen not

to claim that defendant Culp has violated these underlying claims is of no import as

to Culp's potential liability on plaintiffs' conspiracy claim.  See Fink, 2009 U.S.

Dist. LEXIS 19328 at *19-20 (M.D. Pa. Mar. 10, 2009) (noting that "[t]he plaintiff

must establish that the conspiracy attempted to effect a separate, underlying tort")

(emphasis added).  Concerning that claim, plaintiffs have alleged a number of acts

undertaken by Culp. These acts were arguably overt and taken in furtherance of the

conspiracy to defraud plaintiffs.  As such, we conclude that plaintiffs have alleged

facts sufficient to support a conspiracy to defraud claim against defendant Culp.

## IV.  Whether Plaintiffs State an Actionable Tortious Interference Claim as to Culp

The elements that a plaintiff must make out for an actionable tortious

interference claim are as follows:

15

> (1) the existence of a contractual relationship between plaintiff and a third party; (2) purposeful action on the part of the defendant, with specific intent to harm the existing relationship; (3) the absence of a privilege or justification on the part of defendant; and (4) actual legal damages resulting therefrom.

Hopkins v. GNC Franchising, Inc., 288 Fed. Appx. 871, 873 (3d Cir. 2008) (citing

CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d

Cir. 2004)). Defendant Culp claims that, according to Third Circuit case law, a

defendant's conduct must be improper and "independently actionable" if it is to be

considered tortious interference. See CGB Occupational Therapy, 357 F.3d at 388-

89; Crivelli v. Gen. Motors Corp., 215 F.3d 386, 395 (3d Cir. 2000); National Data

Payment Systems v. Meridian Bank, 212 F.3d 849, 857-58 (3d Cir. 2000). Culp

argues that the plaintiffs have failed to allege any actions on the part of Culp that

were either "independently actionable" or improper; therefore, Culp claims that

plaintiffs have failed to state a tortious interference claim against Culp. On the

other hand, plaintiffs claim that Culp's actions were improper and that, under

Pennsylvania law, a defendant's conduct need not be "independently actionable"

for the defendant to be liable for tortious interference.

We agree with plaintiffs that they have properly stated an actionable tortious

interference claim against Culp. Plaintiffs have adequately alleged that Culp's

actions were neither privileged nor justified. As plaintiffs have noted, in

determining whether a defendant's actions were privileged or justified, a court in Pennsylvania will ask whether the actions "are sanctioned by the 'rules of the game' which society has adopted . . . ." <u>Adler, Barish, Daniels, Levin & Creskoff v. Epstein</u>, 393 A.2d 1175, 1184 (Pa. 1978). In answering this question, a court will look to the Restatement (Second) of Torts, § 767, which lists those factors a court is to consider in analyzing whether a defendant's conduct is proper.[4]

In light of the above factors, plaintiffs have sufficiently alleged that Culp's conduct was improper as it related to the purchase of the assets of Chromatex and other Rossville-related entities. As plaintiffs need not allege that the Culp's conduct was "independently actionable,"[5] we conclude that plaintiffs have properly

_____

[4] These factors include:
   (a) The nature of the actor's conduct,
   (b) The actor's motive,
   (c) The interests of the other with which the actor's conduct interferes,
   (d) The interests sought to be advanced by the actor,
   (e) The proximity or remoteness of the actor's conduct to the interference, and
   (f) The relations between the parties.

Restatement (Second) of Torts § 767 (1979). Although the Second Restatement refers to these factors in determining whether conduct is proper, Pennsylvania courts have utilized these factors for the purposes of determining the existence of privilege. <u>See</u> <u>PSC Info Group v. Lason, Inc.</u>, 2008 U.S. Dist. LEXIS 84949 (E.D. Pa. Oct. 21, 2008).

[5] <u>See</u> <u>Adler</u>, 393 A.2d at 1183-84; <u>Walnut St. Assocs. v. Brokerage Concepts, Inc.</u>, 2009 PA Super 191, *7-12 (Pa. Super. Ct. 2009).

stated an actionable tortious interference claim against Culp.

### V. Whether Plaintiffs' Tort Claims Against Culp are Time-Barred

Finally, defendant Culp argues that the plaintiffs' claims at issue are time-barred. As support, Culp claims that the two-year statute of limitations governing tort claims has long since passed because the injury that plaintiffs complain of occurred when Culp paid Rossville Investments for the purchase of Chromatex and other Rossville-related entities, a payment which took place in the 1990s. Plaintiffs claim that their claims should be allowed pursuant to the discovery rule.

The discovery rule applies to tortious interference with contract claims. See Bealer v. Mut. Fire, Marine and Inland Ins., 2006 U.S. Dist. LEXIS 4018 (E.D. Pa. Feb. 1, 2006). As such, "the applicable limitations period commences when the plaintiff learns that she has an injury and its cause." Wilson v. El-Daief, 600 Pa. 161, 171 (Pa. 2009) (citing Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005)).

The plaintiffs are right to point out that "'[o]nly where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.'" Computer Support, Inc. v. Booker Transp. Servs., 2009 U.S. Dist. LEXIS 81790 (M.D. Pa. Sept. 9, 2009) (quoting Baumgart v. Keene Bldg. Prods. Corp., 666 A.2d 238, 244 (Pa. 1995)). Here, we do not believe that the facts are so clear that we can conclude, as a matter of law,

when the limitations period began to run. Plaintiffs have encountered much difficulty in the discovery process, and it is unclear to this Court when plaintiffs were reasonably put on notice that Culp did not pay the purchase price for Chromatex and related Rossville entities to Chromatex or Rossville Industries. In addition, plaintiffs claim that they were only informed as to Rossville Investments' payment of the EPA judgment in January of 2009.

In light of the above, we cannot conclude as a matter of law that plaintiffs' tort claims against Culp are time-barred.

**CONCLUSION:**

For the aforementioned reasons, we will deny Culp's request that this Court find, on the grounds raised above, plaintiffs' amended complaint to be futile. As such, we will grant plaintiffs' motion seeking to amend their complaint, as justice so requires. (Rec. Doc. No. 43).

s/ James F. Mcclure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALAN SHULMAN, et al.,       :     Case No. 3:08-CV-0229
                                :
        Plaintiffs,       :
                                :
        v.               :     (Judge McClure)
                                :
CHROMATEX, INC., et al.,    :
                                :
        Defendants.     :

**ORDER**

December 16, 2009

For the reasons set forth in the accompanying memorandum,


**IT IS HEREBY ORDERED THAT:**

1.     Plaintiffs' Motion For Leave to File Amended Complaint is

GRANTED.  (Rec. Doc. No. 43).

2.     Plaintiffs shall file an amended complaint in the form attached as

Exhibit A to Record Document No. 43 on or before December 23, 2009.

3.     Discovery may continue.  A new deadline will be set by further order

of court, which will be issued following a further case management conference to

be held when counsel have entered appearances on behalf of the additional

defendants named in the amended complaint.

                              s/ James F. Mcclure, Jr.
                              James F. McClure, Jr.
                              United States District Judge