**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALAN SHULMAN, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:08-0229 |
| v. | (JUDGE CAPUTO) |
| CHROMATEX, INC., et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court is the Motion for Sanctions and a Rule to Show Cause why Defendants Feldspar Investments, LLC, Feldspar Properties, LLC, and Ronald W. Satterfield (collectively "Defendants") Should Not Held in Contempt of Court. (Doc. 139). For the reasons that follow, Plaintiffs' request for sanctions will be granted in part and denied in part.

## **I. Factual Background**

In 1991, Plaintiffs sold a manufacturing plant and property located in Hazle Township, Luzerne County, Pennsylvania (the "Site") to Chromatex and Rossville Industries. As part fo the sale, Chromatex and Rossville Industries agreed to defend and indemnify Plaintiffs against any environmental liability associated with the Site (the "Indemnification Agreement"). Thereafter, the Environmental Protection Agency ("EPA") sued Chromatex and Plaintiffs due to environmental issues related to the Site. Chromatex provided a defense for Plaintiffs. In 1993, the EPA obtained both a judgment for its then-accrued response costs and a declaratory judgment for future response costs.

In the meantime, Defendant Culp, Inc. purchased substantially all of the assets of Chromatex and related selling corporations for $32.8 million- $13.3 million to pay the debts of the selling corporations and the rest in cash. Chromatex received none of the sale proceeds.

Instead, Defendant Satterfield, Defendant W. Frank Hutchenson, and other directors and shareholders of Rossville Investments and Chromatex allegedly diverted funds from Chromatex and sought to shield the funds from being used to satisfy the EPA's additional costs and the indemnification obligations owed to Plaintiffs.

Meanwhile, unbeknownst to Plaintiffs, the EPA continued to conduct response actions at the site. After ten years of additional work, the EPA began to issue invoices to Chromatex and Plaintiffs now totaling over $10.3 million in costs allegedly incurred for clean-up activities.

Ultimately, Plaintiffs commenced this action against a number of Defendants for damages and to enforce the Indemnification Agreement. In particular, Plaintiffs named Feldspar Investments, LLC and Feldspar Properties, LLC as Defendants because the two companies were allegedly formed by Satterfield and were entities into which the assets of Chromatex were fraudulently transferred. Satterfield was also named as a Defendant.

## II. Relevant Procedural History

On April 14, 2010, Plaintiffs served interrogatories and document requests on the Feldspar Defendants. On April 26, 2010, Plaintiffs served interrogatories and document requests on Defendant Satterfield. Defendants failed to timely respond to the discovery requests or request an extension of time to respond.

Thereafter, on June 22, 2010, Plaintiffs filed a motion to compel Defendants to provide responses to their discovery requests. On July 2, 2010, Defendants provided minimal responses to Plaintiffs' requests, including the production of fifteen (15) documents. On July 26, 2010, Plaintiffs filed a response identifying the deficiencies in Defendants' discovery production.

On October 8, 2010, the Court granted Plaintiff's motion to compel discovery from Defendant Satterfield and the Feldspar Defendants.

In March 2011, Plaintiffs sent multiple correspondences to Defendants detailing the deficiencies in their discovery responses and requesting supplemental discovery disclosures. In particular, Plaintiffs sought electronically-stored information in its native format after Defendant Satterfield produced an incomplete printout of electronic financial statements that had not been previously produced.

On April 5 and 6, 2011, the Court held a hearing on the destruction of documents by Satterfield and Defendants Chromatex/Rossville. During the course of the hearing, the Court confirmed that Plaintiff's motion to compel discovery from the Feldspar Defendants and Defendant Satterfield was granted on October 8, 2010. This occurred in the presence of Defendant Satterfield.

On August 9, 2011, Plaintiffs filed the instant motion for sanctions after Defendants failed to supplement their discovery with proper disclosure or responsive information and documents. Specifically, Plaintiffs requested the Court to impose sanctions with the ongoing effect that would induce Defendants to comply with their discovery obligations, to enter a default judgment against Defendants, and/or to require Defendants to pay Plaintiffs' expenses attributable to Defendants' discovery-related misconduct. The parties subsequently sought to resolve the litigation through mediation, but mediation efforts were unsuccessful. Thereafter, on July 19, 2012, the Court conducted a hearing as to why Defendants shall not be held in contempt of Court.

### III. Discussion

**A.    Civil Contempt**

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966) (citing *United States v. United Mine Workers*, 330 U.S. 258, 330-32, 67 S. Ct. 677, 713-14, 91 L. Ed. 884 (1947) (Black and Douglas, JJ.,

concurring in part and dissenting in part)). Civil contempt sanctions are "penalties designed to compel future compliance with a court order, [and] are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2252, 129 L. Ed. 2d 642 (1994).

> Civil contempt may be employed to coerce a party into compliance with the court's order and to compensate for losses sustained by the disobedience. Coercive sanctions . . . look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or . . . by setting forth in advance the penalties the court will impose if the party deviates from the part of obedience.

*Int'l Plastics & Equip. Corp. v. Taylor's Indus. Serv. Corp.*, No. 07-1053, 2011 WL 1399081 (W.D. Pa. Apr. 12, 2011) (internal citations omitted).

In the context of civil contempt, a district court may impose a wide range of sanctions, including incarceration, fines, or a reimbursement of costs to the complainant. *See id*. at *5. A contempt fine is "considered civil and remedial if it either 'coerces the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Bagwell*, 512 U.S. at 829 (quoting *United Mine Workers*, 330 U.S. at 303-04). However, "where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Id*. The fine may be payable to the court, or imposed "payable to the complainant [if the fine is] based upon evidence of the complainant's actual loss." *McDonald's Corp. v. Victory Inv.*, 727 F.2d 82, 87 (3d Cir. 1984) (citing *United Mine Workers*, 330 U.S. at 304).

"To prove civil contempt, the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citing *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990)). These elements must be established by clear and convincing evidence. *See id*. at 1321.

Plaintiffs have established by clear and convincing evidence that a civil contempt fine is necessary to coerce Defendants into making good and full-faith efforts to comply with its discovery obligations. In particular, as to the first element set forth in *Harris*, a valid Court Order was entered on October 8, 2010 which granted Plaintiffs' motion to compel and required disclosures and discovery to be produced by Defendants. In addition, this Order was reaffirmed by the Court at the April 2011 hearing and Defendant Satterfield acknowledged at the July 19, 2012 hearing that he was aware of this Order, satisfying the second element. Furthermore, the third element identified in *Harris* is undoubtedly satisfied as Defendants have disobeyed this discovery Order for nearly two years by refusing to produce documents or answers to interrogatories responsive to Plaintiffs' request (and which are specifically identified in the accompanying Order). Thus, there is clear and convincing evidence that Defendants are in civil contempt of the Court's October 8, 2010 Order.

As such, commencing on the date of entry of the accompanying Order, Defendants will be required to pay five hundred dollars ($500.00) per day to the Clerk of Court for the United States District Court for the Middle District of Pennsylvania. The fine will continue indefinitely until counsel for Plaintiffs assures the Court that complete and substantive responses to the outstanding discovery requests are provided, which are specifically identified in detail in the accompanying Order.

**B.    Additional Sanctions**

Plaintiffs also request that default judgment be entered against Defendants and/or that Defendants be required to pay Plaintiffs reasonable fees and expenses incurred by Plaintiffs in preparing their motions to compel and the instant motion for sanctions. In addition, Plaintiffs request the opportunity to file a supplemental application for fees and expenses incurred in preparing for and attending the July 19, 2012 hearing. Rule

37(b)(2)(C) provides:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). Courts typically use the lodestar method to calculate an award of expenses and attorney's fees as a sanction under Rule 37 against a party failing to comply with a discovery order. *See, e.g., Miles v. Elliot*, No. 94-4669, 2011 WL 5524842, at *1 (E.D. Pa. Nov. 14, 2011). The lodestar formula begins with the number of hours spent pursuing the claim multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Although the attorney's usual billing rate provides a starting point, this is not dispositive of whether the requested rate is reasonable. *Miles*, 2011 WL 5524842, at *2 (citing *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)).

Here, Plaintiffs seek a total of $6,897.00 in connection with the Motion to Compel as set forth in the October 27, 2010 Petition for Fees. (Doc. 105.) This is comprised of 20.6 hours for Marsha Sajer, a K& L Gates partner, at $300.00 per hour, 1.8 hours for Abram D. Burnett, III, a K & L Gates associate, at $215.00 per hour, and 3.3 hours for Troy Rohrbaugh, a K & L Gates paralegal, at $100.00 per hour.

In preparing the Motion for Sanctions and for a Rule to Show Cause, Plaintiffs seek $7,140.00 in fees. (Doc. 166.) The fee request is comprised of 23.0 hours for Ms. Sajer at $300.00 per hour and 2.4 hours for Mr. Rohrbaugh at $100.00 per hour. Additionally, Plaintiffs request permission to supplement their fee petition to address fees and expenses incurred in preparing for and attending the July 19, 2012 hearing.

While Plaintiffs' request for entry of default judgment will be denied, Plaintiffs' request for fees associated with preparing the motions to compel and the instant motion for

sanctions will be granted.  Pursuant to Rule 37(b)(2)(C), as Defendants have not presented any evidence that their failure to comply with their discovery obligations was justified, the Court must order them to pay Plaintiffs' reasonable expenses.  And, as Plaintiffs' requested rates and hours are reasonable, Defendants shall pay Plaintiffs the requested amounts of $6,897.00 and $7,140.00- for a total of $14,037.00- within ten days from the date of entry of the accompanying Order.  Additionally, Plaintiffs may file a supplemental fee petition for expenses incurred in preparing for and attending the July 19, 2012 hearing by August 17, 2012.

## IV. Conclusion

For the above stated reasons, Defendants are adjudged to be in civil contempt of the Court's October 8, 2010 Order and the above-described sanctions will be ordered.

An appropriate order follows.

August 10, 2012  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge